## COMMONWEALTH *vs.* EDWIN J. HOBBS.

Suffolk. Nov. 23, 1885. — Jan. 7, 1886. DEVENS & GARDNER, JJ., absent.

An indictment, on the Pub. Sts. *c.* 202, § 32, alleging that the defendant feloniously, wilfully, and maliciously mingled two ounces of a certain poison, to wit, white arsenic, with certain food, with intent that the same should be cooked and eaten by one C., with the intent to injure and kill said C., is sufficient, without further alleging that the defendant knew that the arsenic was a poison.

At the trial of an indictment, on the Pub. Sts. *c.* 202, § 32, for attempting to poison a person by mingling white arsenic with his food, a chemical analysis, which was put in evidence, showed that certain food eaten by him contained a quantity of white arsenic. There was also evidence that, prior to the time of the alleged attempt to poison, the defendant bought two boxes of an article called "Rough on Rats," for the declared purpose of killing cats and rats; that there was but one article called by that name; that it was manufactured by one W.; and that it was a uniform article. A chemist, who had analyzed a box of the article, manufactured by W., was allowed to testify that it consisted almost wholly of white arsenic, colored with a little lamp-black. *Held*, that the evidence of the chemist was competent; and that the fact that the arsenic was colored with lamp-black was immaterial.

At the trial of an indictment, on the Pub. Sts. *c.* 202, § 32, for attempting to poison a person by mingling a certain quantity of white arsenic with his food, if a chemical analysis of a portion of such food eaten by him showed that it contained white arsenic, the fact that the relative quantity of arsenic found therein did not correspond with that alleged in the indictment is immaterial.

At the trial of an indictment for attempting to poison C., who was a witness for the government, the defendant was allowed to show that C. had preferred several other charges against him prior to the finding of this indictment; and that C. had procured his arrest upon one of them, for which an indictment was pending. The defendant then offered to show that the particular charge contained in that indictment was false, and was known to be so by C. This evidence was excluded. *Held*, that the defendant had no ground of exception.

INDICTMENT on the Pub. Sts. *c.* 202, § 32, in eight counts. The first count alleged that the defendant, on March 24, 1885, at Boston, " feloniously, wilfully, and maliciously did mingle a certain quantity, to wit, two ounces, of a certain poison, to wit, white arsenic, with certain food, to wit, two quarts of meal, with intent then and there that the same should be cooked and eaten" by one Lillian C. Cram, " with the intent then and there to injure and kill" said Lillian C. Cram.

The second count was in the same language as the first, except that the words Elizabeth A. were used instead of Lillian C.

The third and fourth counts were similar to the first and second, respectively, except that the date of the offence was alleged to be on April 19, 1885.

The last four counts corresponded to the first four, respectively, except that the poison was not designated, and a more particular description of it was alleged to be unknown.

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment, because it was not set forth or alleged in either count thereof that the defendant knew that said poison alleged to have been mingled with said food was arsenic or poison. *Aldrich*, J., overruled this motion.

It appeared at the trial, that the defendant had lived and boarded at the house of said Elizabeth A. Cram for some months prior and up to March 25, 1885, when he left; that, on May 19, 1885, said Elizabeth A. Cram and Lillian C. Cram ate of some bread, made the day before from certain Indian and rye meal, which, they testified, had been in their house at the time of and prior to the defendant's leaving, and that, upon eating said bread, they became violently sick; that, about the middle of February, 1885, the defendant bought a small box of what is known as "Rough on Rats;" and again, on the 20th of the same month, he bought another box of the same article, both manufactured by Ephraim S. Wells of New Jersey. These boxes were not in evidence, and there was no direct evidence as to what became of them other than the declaration of the defendant himself at the time of purchasing the same, that he wanted them for the purpose of killing cats and rats. But there was evidence tending to show that there was but one article called "Rough on Rats;" that that article was manufactured by said Wells; and that it was a uniform article.

Dr. Babcock, a chemist and a witness for the government, testified that he received at different times a quantity of Indian and rye meal, and a small piece of brown bread, to analyze. This piece of bread was a part of the loaf of which Elizabeth A. Cram and Lillian C. Cram had eaten, as above stated, and the meal analyzed by Dr. Babcock was part of the several parcels of meal out of which the bread was made. He testified that in seven hundred grains of the Indian meal he found nineteen grains of white arsenic; and that in seven hundred grains of the rye meal

he found five and eight-tenths grains of white arsenic; and in the bread he found a large quantity of white arsenic, but did not determine the amount. He also made an analysis of a box of " Rough on Rats," manufactured by said Wells; and testified, against the defendant's objection, that the material in the box which he examined consisted almost wholly of white arsenic, colored with a little lamp-black.

The judge instructed the jury that, before they could find that the defendant had purchased white arsenic in the shape of the article called " Rough on Rats," they must first determine that the article of that name purchased by the defendant was the same as that analyzed by Dr. Babcock.

On cross-examination of Elizabeth A. Cram, a witness for the government, it was shown that she had preferred several other charges against the defendant prior to the finding of this indictment, and furnished the police with evidence thereof, in order that they might procure warrants thereon for the defendant's arrest; and that she had charged him with cutting her dead husband's picture and several dresses, upon leaving her house, March 25, 1885, and that on this charge she procured his arrest on April 4, 1885, for which an indictment was pending.

The defendant contended that these various charges, including the charges in this indictment, were all parts of a premeditated plan on the part of Elizabeth A. Cram to persecute the defendant; and, to show this, as also to contradict said witness, he offered to prove that the injuries to said picture were done a year before, and that said witness knew that the defendant could not have been guilty of that charge; but this evidence was excluded, as relating to a collateral matter, which was itself the subject of an indictment now pending against the defendant.

After the evidence was all in, the defendant asked that the first four counts be dismissed, because of a variance, inasmuch as it was not shown that the two ounces of arsenic in two quarts of meal were the proportional equivalent of the five and eight-tenths grains of arsenic found in seven hundred grains of rye meal, or the nineteen grains of arsenic found in seven hundred grains of Indian meal. But the judge refused so to do.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. A. McGeough*, for the defendant.

*E. J. Sherman*, Attorney General, (*H. N. Shepard*, Assistant Attorney General, with him,) for the Commonwealth.

C. ALLEN, J. 1. The indictment was sufficient in form. *Commonwealth* v. *Bearse*, 108 Mass. 487. *Commonwealth* v. *Galavan*, 9 Allen, 271.

2. There being evidence to show that the bread and Indian meal contained the substance known as white arsenic, evidence to show a previous purchase or possession of white arsenic by the defendant would be clearly competent. And evidence to show that there was but one article called "Rough on Rats," that it was manufactured by one Wells, that it was a uniform article, and that the defendant had bought two boxes of this article prior to the time of the alleged attempt to poison, for the declared purpose of killing cats and rats, was sufficient to make it proper to receive in evidence the chemist's analysis of another box of that article, showing that it consisted almost wholly of white arsenic.

3. The fact that the white arsenic was colored with lamp-black was immaterial. It still remained the substance known as white arsenic, though no longer white in appearance.

4. The objection that the relative quantity or proportion of arsenic found in the meal did not correspond with that charged in the indictment is immaterial. *Commonwealth* v. *McLaughlin*, 105 Mass. 460.

5. The defendant was allowed, without objection, to show bias against him on the part of the witness Elizabeth A. Cram, by proof that she had preferred several other charges against him, prior to the finding of this indictment, and that she had procured his arrest upon one of them, for which an indictment was now pending. In order to show that the bias of the witness was of a deeper grade than might otherwise be inferred from the bringing of these charges, the defendant offered to show, in addition, that the particular charge contained in the indictment was false, and was known to be so by the witness. But this would be going further than is required for purposes of justice. If the defendant were allowed to put in evidence that the charge was false, the government might meet this evidence by showing that the charge was true, and thus a distinct and collateral issue

would be presented to the jury. No useful purpose would be subserved by requiring the jury to investigate the merits of other controversies, or to listen to the details of the quarrels between the witness and the defendant. The only legitimate purpose of the testimony would be to show bias, and thus to impeach the credibility of the witness. It is impracticable to carry an inquiry into the precise degree of ill feeling or bias so far as the defendant sought. *Exceptions overruled.*