A grand jury indicted Robert Kawada alleging: (1) attempted poisoning in violation of G. L. c. 265, § 28; (2) assault and battery by  means of a dangerous  weapon on a pregnant person in violation of G. L. c. 265, § 15A(c)(ii); and (3) assault and battery on a family or household member in violation of G. L. c. 265 § 13M(a ). Defendant has moved to dismiss Indictments -001 (attempted poisoning) and the portion of -003 (domestic assault and battery) that alleges a qualifying relationship between the defendant and the complainant due to insufficient evidence presented to the grand jury. See Commonwealth v. McCarthy, 385 Mass. 160, 163-164 (1982).
            I held a non-evidentiary hearing and heard argument by counsel. After reviewing the grand jury minutes, pleadings , arguments of counsel, and for the reasons stated below , the defendant's motion to dismiss is ALLOWED in part and DENIED in part. Indictment -001 alleging attempted poisoning is dismissed. The request to dismiss the portion of Indictment -003 that alleges a qualifying domestic relationship is denied.
 
                                                            -1-
 
BACKGROUND
            The grand jury heard evidence that in January 2024, the complaining witness [1] and the defendant met through a dating app. They met up again in February and twice in March. At the February and March dates they had sex. They did not  use contraception  on all  three occasions. The complainant believed that she could not get pregnant due to a medical condition. Soon after that the defendant told the complainant that he was not interested in pursuing a relationship with her. By mid-March,  CW learned that she was pregnant and  told  the defendant.  CW intended  to go through with the pregnancy and Kawada was supportive,  telling  her that  he  would  support her. The complainant knew that Kawada had two children and  asked  him for advice about  diet and nutrition.
            On April 22, 2024, Defendant gave CW supplements that he claimed were iron pills and told her to put 6 to 8 pills in her cheeks and let them absorb without anything to drink rather than swallowing them. CW felt poorly shortly after taking the pills and experienced terrible cramping in her lower abdomen. Later that evening she threw up and noticed a bloody discharge following a bowel movement. She went to the hospital and learned that the fetus was still viable.
            On April 23, 2024, Kawada brought her more pills that he said were iron pills and instructed her to put them in her cheeks and let them melt. She went into the bathroom and spit them out. The following day she told Kawada that she had spit them out. Complainant said she wanted to check with her doctor before taking any supplements. Defendant accused her of not trusting him and became upset.
            A few days later, just before Kawada said he would  arrive at her house, Complainant  got  a call by someone claiming to be a nurse from Massachusetts General Hospital, where she
 
--------------------------------------------
 
[1] The complaining witness's name has been impounded and will be referred to as Comp lain ant or CW.
 
                                                            -2-
 
received care. The caller told her that her bloodwork showed that her iron levels were low and that she should take supplements. The caller instructed her on how much iron to take per day. Defendant arrived at her house a few minutes later and CW told him about the call from the nurse. He gave her iron pills that he had brought for her. He instructed her to hold the pills in her cheek or under her tongue. She consumed the pills. Defendant inquired about whether she would seek an abortion and got angry when she said she would continue the pregnancy. CW felt very ill that night. She experienced severe cramping and bleeding. CW miscarried and her pregnancy terminated.
            CW called the phone number of the caller claiming to be a nurse from MGH and discovered that it was a "Google Voice" number. The call did not originate from a recognized MGH number. CW provided the police with one leftover pill that the defendant had represented as iron pills. The appearance of the pill is consistent with the pill form of Misoprostol, a medication used to terminate pregnancies. Records show that two deliveries of Misoprostol and Miphepristone, another drug used to end pregnancies, were delivered to Defendant 's address.
DISCUSSION
            The grand jury stands between the government and the individual to guard against "hasty, malicious and oppressive public prosecutions. " Jones v. Robbins , 74 Mass. 329, 343-344 (1857). Because its essential functions are to investigate  and  charge,  it is not the  purpose  of the grand jury to determine  the guilt or innocence  of the accused  or even to test the adequacy  of the evidence to sustain a finding of guilt. See Commonwealth v. Moran, 453 Mass. 880, 883-884 (2009); Commonwealth v. Goldstein, 54 Mass. App. Ct. 863, 866-867 (2002).
            "The question posed by a McCarthy motion is whether the grand jury were presented with ' sufficient evidence to establish the identity of the accused and probable cause to arrest
 
                                                            -3-
 
him." ' Commonwealth v. Johnson, 92 Mass. App. Ct. 538, 541-542 (2017), quoting Commonwealth v. Bell, 83 Mass. App. Ct. 61, 63 (2013). Probable cause requires "reasonably trustworthy information ... sufficient  to warrant  a prudent  man in  believing  that the defendant had committed . . . an offense." Bell, 83 Mass. App. Ct. at 63, quoting Commonwealth v. 0 'Dell, 392 Mass.445 , 450 (1983). "Probable cause to sustain  an  indictment  is a decidedly  low standard." Commonwealth v. Fernandes, 483 Mass. 1, 20 (2019) (Cypher, J., concurring in part and dissenting in part) (citation and  internal  quotations  omitted).  "When testing  the sufficiency of the evidence to sustain a grand jury indictment [courts] need not determine that the evidence would allow a reasonable person to find [the defendant guilty] beyond a reasonable doub t." Commonwealth v. Riley, 73 Mass. App. Ct. 721, 726-727 (2009), quoting Commonwealth v. Levesque, 436 Mass. 443, 452 (2002). Rather, the "quantum of evidence !equired to indict ... [is] considerably less exacting than that required of the petit jury that adjudicates guilt." Id. at 726.
            I. Attempted Poisoning
            Kawada asserts that the grand jury did not hear sufficient evidence to support the indictment for attempted poisoning. To survive a motion to dismiss based on sufficiency of evidence, the Commonwealth must present sufficient evidence that the defendant: (1) introduced a poison into the body of another person; (2) mingled with food, drink or medicine ; (3) with the intent to kill or injure. G. L. c. 265, § 28. A " poison," for purposes of this statute, does not need to be a substance so inherently dangerous that no reasonable person under normal circumstances would ingest it. Commonwealth v. Walker, 442 Mass. 185, 195 (2004). There are substances that have beneficial uses, but when used improperly, may have the capacity to act as a poison. Id. at 196 ("[T]empazepan administered improperly is capable of causing injury, thus acting as a
 
                                                            -4-
 
poison"). Here the poison alleged is Misopristol, which has the capacity to  induce a miscarriage and terminate a pregnancy. The Commonwealth has presented sufficient  evidence  that the iron pills that Kawada provided to CW were Misopristol and that this substance can act as a poison when taken by a person who does not seek to terminate their pregnancy.[2] Inducing a miscarriage against a person's will is an injury to another person, as required by the statute.
            The remaining issue with the presentment is that the evidence did not show that Misoprostol was mingled with " food, drink, or medicine." To the contrary, the evidence presented was that Kawada specifically instructed CW to hold the Misopristol under her tongue or in her cheeks and let the pills absorb. "It is a well-established canon of construction that, where the statutory language is clear, the courts must impart to the language its plain and ordinary meaning" (emphasis added). Commonwealth v. Billingslea, 484 Mass. 606, 622 (2020) quoting Commonwealth v. One 1987 Mercury Cougar Auto., 413 Mass. 534, 537 (1992). "The language of a statute is not to be enlarged or limited by construction unless its object and plain meaning require it." Id. , quoting Rambert v. Commonwealth, 389 Mass. 771, 773 (1983).
            The language of G. L. c. 265, § 28 is clear. The "poison"  must  be mingled  with food, drink, or medication. See Walker, 442 Mass. at 196 (sleep medication mixed with alcohol). Commonwealth v. Kennedy, 170 Mass. 18 (1897) (rat poison placed in drinking cup); Commonwealth v. Hobbs, 140 Mass. 443 (1886) (white arsenic mixed into meal used for baking bread). Absent evidence of mingling the Misoprostol with food, drink, or medication, the Commonwealth has not met its burden.
 
--------------------------------------------
 
[2]  The fetus was not viable at the time of the miscarriage, so  the victim  of the alleged  attempt to poison  is   the complainant. Commonwealth v. Cass, 392 Mass. 799, 808 (1984).
 
                                                            -5-
 
            II. Domestic Assault and Battery
            Kawada moves to dismiss the portion of the second indictment for assault and battery on a family or household member, to the extent that the Commonwealth has failed to present sufficient evidence of a qualifying relationship between him and CW. In order to establish probable cause that CW was a family or household member of Kawada, the Commonwealth had to present evidence that they (I) were married, (ii) had a child in common, or (iii) were in a substantive dating relationship. G. L. 265, §13M(c). There is no dispute that CW and Kawada were not married and that the fetus was not viable. The only qualifying relationship would be a "substantive dating relationship."
            The factors the trier of fact may consider when determining whether a relationship is substantive include: "the length of time of the relationship; the type of relationship; the frequency of interaction between the parties; whether the relationship was terminated by either person; and the length of time elapsed since the termination of the relationship." Id. These factors are not individually dispositive and must be taken as a whole to demonstrate a substantive dating relationship. Commonwealth v. Dustin, 476 Mass. 1003, 1005, fn. 7 (2016) ("There does not need to be evidence as to each factor, let alone proof beyond a reasonable doubt as to any one or more of them"). While length of relationship is a factor the factfinder must consider, there is no minimum temporal requirement. CO. v. M M., 442 Mass. 648, 653 (2004) ("It would be unproductive to place a numerical quota on the number of ' dates' that constitute a ' substantive dating relations hip"' ). There is no requirement that the relationship be exclusive  and "a  person can be found to be in more than one ' substantive dating relationship ' at any one time." Brossard v. West Roxbury Div. of the Dist. Court Dep't, 417 Mass. 183, 185 (1994).
 
                                                            -6-
 
            The Commonwealth presented evidence that CW and Kawada met over a dating app in January. They met up three times throughout February and March and had sex on each date. After their third sexual encounter, Kawada indicated that he was not interested in pursuing a relationship with CW. Their subsequent meetings were to discuss CW's pregnancy and Kawada appeared to provide support and guidance that CW relied upon. The alleged assaults occurred shortly after Kawada indicated that he was not interested in pursuing the relationship and while he was providing what appeared to be emotional support. While these facts do not overwhelmingly suggest a serious dating relationship, it is enough to satisfy the probable cause standard. It will be for the factfinder at trial to determine whether they had a "substantive dating relationship. "
            Kawada also alleges that G. L. 265, §13M(c), as applied to him is void for vagueness due to its failure to provide him with fair warning that he was engaged in a substantive dating relationship. A statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden" and "should be deemed void for vagueness." Commonwealth v. Kwiatkowski, 418 Mass. 543 , 547 (1994), quoting Opinion of the Justices , 378 Mass. 822, 826 (1979) . "The essence of the fair warning requirement embodied in the due process clause is that a person should not be punished for an act he could not know was criminal." Robinson v. Berman, 594 F.2d 1, 3 (s1 t  Cir. 1979).  A person who commits an act while on notice that it violates one criminal statute "ha[s] no cause to complain that he had no notice his conduct violated another statute." Id. The defendant had fair notice that his alleged misconduct, which involved causing CW to ingest unwanted medication that could trigger a miscarriage, violated criminal law. He had sufficient notice of the term "substantive dating relationship. " CO., 442 Mass. at 653-654 (2004). See Commonwealth v. Panagopoulos, 60
 
                                                            -7-
 
Mass. App. Ct. 327, 328-329 (2004) (statute not unconstitutionally vague for failure to adequately define those persons subject to its prohibitions.)
ORDER
            For the foregoing reasons, the defendant's motion to dismiss Indictment -001 alleging attempted poisoning is ALLOWED and defendant's motion to dismiss the portion of Indictment-003 that alleges a qualifying relationship is DENIED.
/s/Keren E. Goldenberg
Justice of the Superior Court
March 16, 2026