ANDREW C. WHEELOCK & others *vs.* CITY OF LOWELL & another.

Middlesex.     March 15, 1907. — July 18, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Municipal Corporations*, Powers, By-laws and ordinances. *Constitutional Law. Lowell.*

A city, which already has a city hall sufficient for the accommodation of its city council and its officers and public boards, lawfully may expend money in erecting a commodious and convenient hall to be used for political rallies, conventions and other public meetings of its citizens, which occasionally may be let for private uses when not required for the public needs.

Although it is clearly illegal for a city to permit a hall which it owns and maintains for public meetings of its citizens to be used for private purposes free of charge, such an incidental and unessential element in the management of the building, which easily can be corrected, does not affect the right of the city to replace the building when destroyed by fire.

By St. 1896, c. 415, § 6, the city of Lowell was empowered to create commissions by ordinance and to transfer duties to them, with an exception here immaterial. By an ordinance approved on May 15, 1906, that city created an unpaid

commission to acquire a site and rebuild Huntington Hall, a building which had been used for public meetings of its citizens and had been destroyed by fire. The ordinance provided that the commission should be constituted of four citizens of Lowell who should hold no other municipal office and the mayor *ex officio,* that the four members of the commission other than the mayor should be elected by the aldermen and common council in joint convention, that the chairman of the board of aldermen and the president of the common council should constitute a committee to submit to the joint convention a list of four names as nominees for commissioners, that such names should be voted on separately and in case of failure to elect any one or more of the persons so named, new names should be submitted by the committee until four persons should have been elected, who together with the mayor should constitute such commission. In a suit in equity by ten taxable inhabitants of Lowell under R. L. c. 25, § 100, to restrain that city and its treasurer from paying for the proposed hall, it was contended by the plaintiffs that the ordinance was invalid as in violation of R. L. c. 26, § 7, which provides that " no election of a city officer by a municipal body or board shall be valid unless" the vote is taken in the manner there prescribed. *Held,* that, assuming that the members of the commission were city officers and not merely agents of the city, they were not city officers whose election was required by any general or special law but were the creatures of an ordinance, that the city council having power to create the commission necessarily possessed the incidental power to determine how its members should be chosen, and that the ordinance was a reasonable one within the jurisdiction of the city council and was valid.

In the absence of an ordinance or rule of a city to the contrary, its city council can make an appropriation of money by an order.

An order of a city council cannot be invalidated on the ground that it was passed in violation of the parliamentary rules adopted for the regulation of meetings, as all deliberative bodies can abolish or waive their own rules.

BILL IN EQUITY, filed in the Supreme Judicial Court on August 24, 1906, under R. L. c. 25, § 100, by ten taxable inhabitants of the city of Lowell to restrain that city and its treasurer from paying money for the erection of a public hall to replace a building known as Huntington Hall which had been destroyed by fire.

The case was heard by *Loring,* J., who, after hearing the arguments of counsel, reported it for determination by the full court.

The ordinance of the city of Lowell referred to in the opinion was entitled " An ordinance to create a commission to acquire a site and rebuild Huntington Hall," and was approved by the mayor on May 15, 1906. It was as follows:

" Be it ordained by the city council of the city of Lowell, as follows —

" Section 1. There shall be chosen in the manner hereinafter

provided, four citizens of Lowell who shall hold no other municipal office, who, together with the mayor for the time being, ex-officio, shall constitute a commission to be known as the Huntington hall commission. The members of said commission shall not receive any salary or emolument for their services and shall, unless sooner removèd in the manner provided, by law, hold their respective offices until the completion of the building hereinafter mentioned, and upon the declaration by the mayor in writing filed with the city clerk that the work contemplated by this ordinance has been fully completed, the authority of said commission shall cease and determine.

" Section 2. Within thirty (30) days after the enactment of this ordinance, the board of aldermen and the common council shall meet in joint convention and elect four persons, as above specified to be members of said commission. If any member so elected shall decline to serve, or if by the death, resignation or removal from office of any member of said commission a vacancy shall exist, the city council shall, in joint convention, elect a new member to fill such vacancy.

" Section 3. Said commission shall have the general charge and management of all matters pertaining to the erection of a new public hall to take the place of Huntington Hall recently destroyed by fire ; shall select and purchase or otherwise acquire a site therefor, and shall do, or cause to be done, all things necessary for the erection of a suitable and commodious public hall, with such appurtenances and furnishings as they may deem proper. They shall make all contracts in relation thereto, except for the supplies, but no contract so made involving the expenditure of more than three hundred dollars ($300) shall be valid, and binding upon the city until approved by the mayor in writing ; and no expenditure shall be made by said commission under the authority of this ordinance until the city council has duly voted an appropriation therefor.

" Section 4. The chairman of the board of aldermen and the president of the common council shall constitute a committee to submit to said joint convention a list of four names as nominees for commissioners. Such names shall be voted on separately and in case of failure to elect any one or more of the persons so named, new names shall be submitted by said committee until

four persons shall have been elected, who, together with the mayor shall constitute such commission."

The order of the city council of Lowell referred to in the opinion was adopted by the board of aldermen and concurred in by the common council on July 24, 1906, and was approved by the mayor on July 28, 1906.. It was as follows:

" Order transferring sum of three hundred dollars from appropriation called ' building fund ' to general treasury fund and appropriating the same.   Ordered, if the common council concur, that the sum of three hundred dollars be and the same is hereby transferred from the appropriation called ' building fund ' to the general treasury fund; that the sum of three hundred dollars, be and the same is hereby appropriated from the general treasury fund and placed to the credit of an appropriation to be called ' Huntington Hall Commission-contingent Fund.' "

.*C. Cowley*, for the plaintiffs.

*J. G. Hill*, for the defendants.

RUGG, J.  This is a bill in equity under R. L. c. 25, § 100, praying for an injunction to restrain the payment of money for the erection of a public hall in Lowell.  Three questions are raised.

1.  The plaintiffs contend that, under the circumstances disclosed, the purchase of land and construction of a hall upon it is not a public purpose.  The bill alleges, and the effect of the findings by the single justice is, that the defendant city already possesses a city hall with sufficient accommodations for its mayor, board of aldermen, common council, school committee and other public boards and officers.  While Huntington Hall, which has been burned and to replace which it is proposed to erect the hall now under discussion, was often rented for the usual purposes of a public hall, it was also frequently used for political rallies and conventions and for public and private meetings of citizens.

Municipalities are creatures of the Legislature with powers as to the raising and expending of money strictly limited to the public purposes for which they are created.  They have no power to expend money, which can only come into their treasuries through taxation, for any other than purely public uses.  In its last analysis any other principle is a taking of private

property, through the medium of a public official, for a private use, which is contrary to fundamental cônceptions of good government.

The erection of town houses in which the inhabitants may assemble has been uniformly held to be a public purpose, for which towns might raise money under the general phrase of the statute which empowers appropriations for "other necessary charges." This expression has been continuously iñ our statutes since 1692. St. 1692, c. 28, § 6, (approved November 16.) St. 1785, c. 75, § 7. Rev. Sts. c. 15, § 12. Gen. Sts. c. 18, § 10. Pub. Sts. c. 27, § 10. R. L. c. 25, § 15. *Stetson* v. *Kempton*, 13 Mass. 272, 279. *Spaulding* v. *Lowell*, 23 Pick. 71, 79. *French* v. *Quincy*, 3 Allen, 9. *George* v. *School District*, 6 Met. 497. *Oliver* v. *Worcester*, 102 Mass. 489. *Worden* v. *New Bedford*, 131 Mass. 23. *Kingman* v. *Brockton*, 153 Mass. 255. *Commonwealth* v. *Wilder*, 127 Mass. 1, 3. *Hadsell* v. *Hancock*, 3 Gray, 526. *Friend* v. *Gilbert*, 108 Mass. 408. *Tindley* v. *Salem*, 137 Mass. 171. *Little* v. *Holyoke*, 177 Mass. 114. Since 1869, there has been superadded the right of eminent domain in order to procure a lot for a town or city hall. St. 1869, c. 411, § 1. R. L. c. 25, § 45 ; c. 26, § 2 ; c. 8, § 5, cl. 23. The fact that in comparatively rare instances special statutory authority has been obtained does not argue against the existence of the general power, but is to be accounted for as done through excess of caution or as conferring some additional power nọt derived from the general law. *Shea* v. *Milford*, 145 Mass. 528. *Spaulding* v. *Lowell*, 23 Pick. 71, 79. *Kelley* v. *Boston*, 186 Mass. 165. See St. 1884, c. 309, § 15.

The plaintiffs do not raise the question as to the right of a city to build a building for the use of municipal boards and officers, but they assert in substance that the proposed hall is not needed for any municipal officer or board and is intended to be used as a place for holding theatrical exhibitions, dances and other amusements. The burden of proving these allegations is upon the plaintiffs. If the dominating motive for the erection of the hall is a strictly public use, then the expenditure for it is legal, although incidentally it may be devoted occasionally to uses which are not public. If, however, the project of the defendant city is merely colorable, masking uñder the pretext

of a public purpose a general design to enter into the private business of maintaining a public hall for gain, or devoting it mainly to any other than its public use as a gathering place for citizens generally, such an attempt would be a perversion of power and a nullity and no public funds could be appropriated for it. *Spaulding* v. *Lowell,* 23 Pick. 71, 80. *Opinion of the Justices,* 182 Mass. 605.

The reported facts show a substantial use of Huntington Hall for political rallies, conventions and other public meetings of citizens, although from time to time it has been rented for purposes of amusements and instruction. That the building has been also let for private uses, when not required by the public needs, does not affect the general legal purpose. *French* v. *Quincy,* 3 Allen, 9. The fact, too, that the old hall was occasionally permitted to be used free of charge for private purposes, although clearly illegal, appears to have been an incidental and not an essential element in its management. Means for the correction of this wrong, if attempted with the new hall, are easily accessible. There has been on the whole a failure to show by evidence that the main purpose to which the proposed hall is to be put is private gain and not public gatherings of citizens. The broad question presented therefore is whether cities have the power to raise and appropriate money for building such a hall.

Article 19 of the Declaration of Rights declares that "The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good; give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer." Article 1 of the Amendments to the Constitution of the United States prohibits Congress from passing any law "abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." Respecting this article in the Declaration of Rights it was said by Chief Justice Shaw in *Commonwealth* v. *Porter,* 1 Gray, 476 at p. 478, "Nothing more concerns the public good, than the election of good men, in all respects qualified, to public offices. The extended and almost unlimited rights of suffrage, secured to the people of this Commonwealth by the constitution and

laws, assume and are founded on the right of voters to have the fullest and freest discussion and consultation upon the merits and qualifications of candidates, for their information and the means of exercising a sound and enlightened judgment in regard to public men and political measures." See also *Stone* v. *Charlestown*, 114 Mass. 214, 222; *Commonwealth* v. *Abrahams*, 156 Mass. 57, 60.

It has been the policy of the Legislature to provide in the enactment of city charters by a special section for the exercise of this constitutional right of assembly and to require designated city officials to call such meetings under proper circumstances. Beverly, St. 1894, c. 161, § 9. Boston, Sts. 1821, c. 110, § 25; 1854, c. 448, § 60; 1882, c. 204. Brockton, St. 1881, c. 192, § 32. Cambridge, Sts. 1891, c. 364, § 5; 1846, c. 109, § 12. Charlestown, St. 1847, c. 29, § 18. Chelsea, Sts. 1894, c. 325, § 9; 1857, c. 18, § 20. Chicopee, Sts. 1890, c. 189, § 8; 1897, c. 239, § 8. Everett, St. 1892, c. 355, § 9. Fall River, Sts. 1854, c. 257, § 20; 1869, c. 245, § 50; 1873, c. 245, § 50; 1885, c. 269, § 23; 1878, c. 239, § 4; 1899, c. 371, § 32; 1902, c. 393, § 41. Fitchburg, St. 1872, c. 81, § 27. Gloucester, St. 1873, c. 246, § 28; see Sts. 1900, c. 323, § 7; 1898, c. 302, § 7; 1896, c. 441, § 8; 1871, c. 358, § 29. Haverhill, St. 1869, c. 61, § 28; see Sts. 1867, c. 251, § 28; 1901, c. 438, § 8. Holyoke, Sts. 1873, c. 154, § 23; 1896, c. 438, § 8. Lawrence, Sts. 1853, c. 70, § 18; 1888, c. 439, § 5; see St. 1895, c. 326, § 10. Lowell, Sts. 1875, c. 173, § 34; 1836, c. 128, § 23. Lynn, Sts. 1850, c. 184, § 19; 1849, c. 89, § 18; 1893, c. 378, § 8; 1894, c. 247, § 9; 1900, c. 367, § 9. Malden, St. 1881, c. 169, § 31. Marlborough, St. 1890, c. 320, § 8; see St. 1896, c. 379, § 9. Medford, Sts. 1892, c. 324, § 9; 1903, c. 345, § 7; 1906, c. 252, § 1. Melrose, St. 1899, c. 162, § 8. New Bedford, Sts. 1847, c. 60, § 19; 1868, c. 228, § 25; 1875, c. 140, § 51. Newburyport, St. 1851, c. 296, § 20. Newton, Sts. 1897, c. 283, § 39; 1873, c. 326, § 28. North Adams, St. 1895, c. 148, § 8. Northampton, St. 1883, c. 250, § 37; see St. 1900, c. 427, § 8. Pittsfield, Sts. 1889, c. 411, § 8; 1895, c. 302, § 8; 1875, c. 166, § 28; 1904, c. 389, § 6. Quincy, St. 1888, c. 347, § 8. Roxbury, St. 1846, c. 95, § 19. Salem, St. 1836, c. 42, § 17. Somerville, Sts. 1871, c. 182, § 26; 1899, c. 240, § 8. Springfield, St. 1852,

c. 94, § 20.   Taunton, Sts. 1882, c. 211, § 21; 1864, c. 209, § 18.
Waltham, St. 1893, c. 361, § 9.   Westfield, St. 1906, c. 409,
§ 11.   Woburn, Sts. 1897, c. 172, § 8; 1888, c. 374, § 8.
Worcester, Sts. 1848, c. 32, § 18; 1866, c. 199, § 34; 1893,
c. 444, § 8.   See St. 1892, c. 377, Title II. Art. 9.   This act,
although held on general grounds unconstitutional in *Larcom*
v. *Olin*, 160 Mass. 102, was a manifestation of legislative intent
in this respect.   St. 1876, c. 211, in § 4, (for Fall River,) and
St. 1877, c. 146, in § 4, (for Springfield,) recognize the existence
of the right in different phrase.   It is believed that such express
provision is in every city charter enacted save one for Chelsea,
St. 1881, c. 200, one for Newton, St. 1882, c. 210, and one for
Waltham, St. 1884, c. 309, all three now repealed, and two for
Lowell which were rejected by popular vote, St. 1892, c. 323, and
St. 1893, c. 429.   It is possible that §§ 4, 9, 4, 3 and 3 respec-
tively of these several acts might have been held to cover the
subject by implication.

It is hard to overestimate the historic significance and patri-
otic influence of the public meetings held in all the towns of
Massachusetts before and during the Revolution.   No small part
of the capacity for honest and efficient local government mani-
fested by the people of this Commonwealth has been due to the
training of citizens in the forum of the town meeting.   The jeal-
ous care to preserve the means for exercising the right of assem-
bling for discussion of public topics manifested in city charters
by the representatives of the people, whenever providing for the
transition from the town meeting to the city form of local gov-
ernment, demonstrates that a vital appreciation of the importance
of the opportunity to exercise the right still survives.   The prac-
tical instruction of the citizen in affairs of government through
the instrumentality of public meetings and face to face discus-
sions may be regarded quite as important as their amusement,
edification or assumed temporal advancement in ways heretofore
expressly authorized by statute and held constitutional.   *Hub-
bard* v. *Taunton*, 140 Mass. 467.   *Morrison* v. *Lawrence*, 98
Mass. 219.   *Kittredge* v. *North Brookfield*, 138 Mass. 286.   *Com-
monwealth* v. *Williamstown*, 156 Mass. 70.   *Kingman* v. *Brockton*,
153 Mass. 255.   *Attorney General* v. *Williams*, 174 Mass. 476.

It is only by a continuance of intelligent, persistent and honest

interest in the cause of good government on the part of the great majority of citizens that the permanency of our institutions can be secured. Only by the abiding constancy of such interest will intelligence triumph over impulse and indifference in public affairs. In no other way can a government by free men continue, which shall in fact preserve the blessings of liberty. The less frequent exercise of the right of public assembly for discussion now than formerly is not to be regarded as an abandonment.

A commodious and convenient hall in which the citizens are to exercise their right of assembling and of considering and discussing public affairs is therefore an object for which the defendant city may legally expend money. See also *Bates* v. *Bassett*, 60 Vt. 530 ; *Greely* v. *People*, 60 Ill. 19 ; *Bell* v. *Platteville*, 71 Wis. 139 ; *Eastman* v. *Meredith*, 36 N. H. 284 ; *Jones* v. *Sanford*, 66 Maine, 585 ; *Clark* v. *Brookfield*, 81 Mo. 503 ; 1 Dillon Mun. Corp. § 30. It has not been argued that there is anything in the acts of the defendant city thus far, which shows an unreasonable or wanton exercise of the power, provided the subject matter is within its scope.

2. The second point raised is, that the ordinance, by which the commission charged with the construction of the hall was created, is in violation of R. L. c. 26, § 7, and therefore is illegal. This contention is not sound. The members of the commission do not belong to that class of city officers whose election is required by any general or special law. The commission was itself the creature of the ordinance. It was necessary that some agent of the city should be selected to perform the service required. Such duty does not appear to have been imposed by law upon any particular city officer and could not be performed by the city council itself. St. 1896, c. 415, § 7. By § 6 of the same act the city council was empowered to create commissions or boards and transfer duties to them, with an exception not here material. Having the power to create the commission by ordinance, the city council necessarily possessed the incidental power to determine how its members should be chosen, whether by appointment by the mayor with or without confirmation by either or both branches of the city council, or in any other reasonable and legal way. The city council of Lowell has the same power, as to matters

not specifically covered by statute, to create committees or com-
missions of citizens for the performance of municipal functions,
possessed by towns in town meeting.  Charter of Lowell, St.
1875, c. 173, § 23.  See *Boston Electric Co.* v. *Cambridge*, 163
Mass. 64.  A broad power in this respect has always been ex-
ercised by towns.  *Haven* v. *Lowell*, 5 Met. 35, 42.  *Shea* v. *Mil-
ford*, 145 Mass. 528.  *Sylvester* v. *Webb*, 179 Mass. 236.  The
ordinance provision in effect was that whoever might hold the
office of mayor for the time being should be a member of the
commission by virtue of his office as mayor, and that nominations
for the other four members should be made by the chairman of
the board of aldermen and president of the common council, and
election by the city council from such nominees, with a provision
for new nominations in case of failure to elect those first nomi-
nated, until the membership of the commission should be com-
pleted.  The substance of this is that nominations should be
made by the designated officers with power in the city council
to approve or reject the persons so nominated.  What the city
council undertook to do was to restrict its own field of selection
to those nominated by the heads of its respective branches.  This
was not unreasonable or illegal, the whole subject matter being
within its jurisdiction.  The provisions of R. L. c. 26, § 7, were
followed in the election of the four citizen members of the com-
mission to the extent that the voting upon the nominations was
*viva voce*.  There is perhaps ground for argument that such a
commission is not a board of public officers, but only municipal
agents.  *Shea* v. *Milford*, 145 Mass. 528.  It is not necessary to
decide this question, but if the argument be sound, the statute
has no application.

3.  The final contention of the petitioners is that in making
the appropriation of $300 for the use of the commission to
be expended in the exercise of its powers, the city council pro-
ceeded not by ordinance, bill or resolution, but by a mere
order, in violation of its regulations and by-laws.  No ordi-
nance or rule of the city of Lowell has been called to our atten-
tion requiring such an appropriation to be made otherwise than
by order and there is no general law making void an appropria-
tion in that form.  *Johnson* v. *Somerville*, 195 Mass. 370.  It is
said also that the appropriation was made in violation of parlia-

mentary law as expounded in Cushing's Manual and his Law and Practice of Legislative Assemblies. If it be assumed that these had been adopted as the rules of the city council, it is enough to say, without passing upon the question whether they were violated, that it is within the " power of all deliberative bodies to abolish, modify or waive their own rules intended as security against hasty action." *Holt* v. *Somerville,* 127 Mass. 408, 411. *Chandler* v. *Lawrence,* 128 Mass. 213. The method of financing the construction of the hall is not before us.

*Bill dismissed with costs.*