STATE OF TENNESSEE *ex rel.* C. H. JOHNSON, *v.* BERT BATES, CITY REGISTER.

(*Nashville,* December Term, 1929.)

Opinion filed July 19, 1930.

BELL & CURTIS, for complainant, appellant.

J. H. NORVILLE, for defendant, appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

An ordinance of the City of Memphis provides that no person shall operate a motor vehicle carrying passengers for hire on any city street without giving bond or providing indemnity insurance of $5,000 upon each car, to cover liability to passengers resulting from negligent operation. This requirement is made a condition to the issuance of a license to operate automobiles for hire.

The relator, C. H. Johnson, filed his petition seeking the writ of mandamus to compel the clerk to issue a license to him. He charged that the ordinance is void because in excess of the powers conferred upon the city by the Legislature and that it is partial and discriminatory.

Relator says that having tendered the privilege taxes and otherwise complied with the law, it was the duty of the clerk to issue the license. The alternative writ of mandamus was issued upon relator's application requiring the respondent, collector and register of licenses and privileges for the city, to show cause, or to issue the license and permit.

The respondent appeared and moved to dismiss the petition, because it disclosed that relator had not complied with so much of the ordinance as required the bond or insurance as a condition precedent to the license. The motion to dismiss was sustained.

The relator appealed and insists that the ordinance is void because the city was without power, either under the charter or general law, to make the regulation, and be-

cause it violates common right, is unreasonable, and discriminatory, and having paid the license fees, and otherwise complied with the law, it was the duty of the respondent to issue the license, and that the peremptory writ should have been granted.

■ The requirement of security for payment of legal claims arising from injuries by motor vehicles on public highways is an extension of the police power to a new field. Since motor vehicles are instruments potential of danger to persons on the highways, and the right to operate them is not an unrestrained right, the State may regulate their use, and as an incident of the regulation provide reasonable means of indemnifying persons who are injured through their negligent operation. The regulation could be limited to those naturally coming within a particular class, without violating the rule against partial and discriminatory laws. *Memphis* v. *State, ex rel.,* 133 Tenn., 83, 42 C. J., pp. 666 and 711.

■ And the Legislature could, in the exercise of the police power, authorize municipalities to make similar reasonable regulations applicable to automobiles operated within the city limits, and the empowering act would not be void because confined to the municipality. *Trigally* v. *Mayor, etc.,* 6 Cold., 390.

■ But no such regulation could be made by a municipality without statutory authority, and unless it was consistent with public policy and not at variance with the general laws of the State. *Long* v. *Taxing District,* 7 Lea, 134; *Katzenberger* v. *Lowe,* 90 Tenn., 241; *Jones* v. *Nashville,* 109 Tenn., 557; *Farmer* v. *Nashville,* 127 Tenn., 515; *Schneiderman* v. *Sesastein,* 64 A. L. R., 981.

■ Respondent insists that the charter authorized the municipality to make the particular regulation and in support refers to *In re Cardinal,* 170 Calif., 519; *Willis*

v. *Ft. Smith* (Ark.), 182 S. W., 275; *Auto Transit Co.* v. *Ft. Worth* (Tex.), 182 S. W., 685; *Ex parte Bogle,* 179 S. W., 1193; *Lutz* v. *New Orleans,* 237 Fed., 1018, referring to 135 Federal, and 3 McQuillan Municipal Corporation, Sections 993 and 1010.

The authorities referred to and relied on by respondent support the insistence that the regulation, if authorized by statute and not at variance with the laws of the State, is not void because discriminatory, but they also recognize the rule that municipal corporations can only exercise such regulatory powers as are expressly granted to them by the Legislature and as are necessarily implied for effecting the purpose for which the express grant of power was made.

In these cases the courts, after referring to the charters and laws of the particular State, found and held that the power to make the regulation was authorized by the Legislature.

The provisions of the charter, copied into the record and relied on by respondent as authority for the ordinance, the original charter, chapter 11, Acts of 1879, and applicable amendatory Acts, chapter 54, Acts of 1905, chapter 242, Acts of 1913, and chapter 297, Private Acts of 1917, are before us. None of these Acts authorize the municipality to exact security from those who operate automobiles to secure claims of persons injured by their use. Section 3, chapter 11, Acts of 1879, conferred power upon the municipality over all affairs of the city involving the peace, safety or general welfare of the inhabitants.

Section 21, chapter 54, Acts of 1905, provides that the legislative counsel shall have power to pass for the government of the city any ordinance not in conflict with the Constitution of the State and the United States, but these

general powers are restricted by narrowing special provisions that follow them and restrain the exercise of the general power to matters in furtherance of the corporate purpose. To justify it in making a municipal by-law regulating occupations and trades, a municipality must find authority in some express legislative grant. *Long* v. *Taxing District, supra.*

The amendatory Act of 1913, chapter 242, empowered the city, through its board of commissioners, "to fix a privilege tax on automobiles for hire not to exceed $15 per annum," and authorized the board "to regulate the running of automobiles and the persons in charge of same, and to require each driver of an automobile to obtain a license, and to show such efficiency as might be reqired by the board prior to the issuance of the license."

These provisions of the charter authorizing the board of city commissioners to regulate the running of automobiles and the persons in charge of them, as the language imports, refer to traffic rules regulating the speed and movement of automobiles about the city streets, and to the licensing of those who operate them. They do not confer the power upon the city to exact security for the benefit of passengers using automobiles, whether kept for hire or otherwise, contrary to public policy of the State and in restraint of the use of automobiles taxed and licensed by the State, to provide revenue for use of the highways, under chapter 73, Acts of 1917, chapter 149, Acts of 1919, and chapter 108, Acts of 1923.

In none of the charter Acts is there a suggestion that the additional regulation covered by the ordinance in question could be made by the municipality in restraint of the State's licensing power. We are, therefore, constrained to reverse the decree and remand the case for further proceedings, not inconsistent with this opinion.