RUTHERFORD *v.* CITY OF NASHVILLE.

(*Nashville,* December Term, 1934.)

Opinion filed February 23, 1935.

500

502

CORNELIUS, McKINNEY & GILBERT, of Nashville, for appellant.

J. WASHINGTON MOORE, JACK KEEFE, and ROBT. L. ALEXANDER, all of Nashville, for appellee.

MR. SPECIAL JUSTICE EDWARD J. SMITH delivered the opinion of the Court.

The bill, which was filed by Rutherford as a taxpayer and resident of the city of Nashville on behalf of himself and other taxpayers, who, it was alleged, pay taxes the proceeds of which go into the general fund of the City, sought to enjoin a diversion of such funds for the purpose of putting into effect Ordinance 903, the validity of which was challenged on eleven grounds.

A temporary injunction was prayed and granted, restraining the city from arresting citizens or assessing fines for failure to have a driver's license while operating motor vehicles on the streets and thoroughfares of the city of Nashville.

By its answer, the city specifically denied each of the grounds on which the alleged invalidity of the ordinance was predicated.

On final hearing, on bill and answer, the court below held that the ordinance was valid, and as a denial of injunctive relief was an adjudication on the merits, dismissed the bill. *Mengle Box Co.* v. *Lauderdale County,* 144 Tenn., 266, 230 S. W., 963.

■ As the case does not involve a review or determination of facts, the appellant properly appealed directly to this court. Code, sec. 10618.

While ten errors formally are assigned, it is stated in the brief of counsel for appellant that four determinative questions are presented for decision: (1) That the ordinance was enacted in violation of charter requirements prescribing the mode of procedure to be pursued by the city council; (2) under guise of being an exercise of the police power, it attempted to levy a privilege tax in violation, both of the statutes of the state, and a charter limitation; (3) if it be considered an attempted exercise of the police power, its provisions, considered separately and together, are so unreasonable, cumbersome, discriminative, and oppressive as to render it invalid; and (4) that it contravenes the public policy of the state of Tennessee.

(1) The ordinance was passed by the city council on third and final reading on April 17, 1934, was approved by the mayor on April 19, 1934, was duly published as required by the charter, and filed with the record clerk of the city.

Admitting these facts, the appellant insists that the third and final reading on April 17, 1934, was invalid because, on that date, and in pursuance of a standing rule of procedure, theretofore adopted by the city council, which allowed any member, voting in the affirmative, to move a reconsideration to be acted on at the next regular meeting, Councilman Briley's motion to reconsider was overruled by the presiding officer, and the ordinance passed on third and final reading on April 17, 1934.

While the bill admits that at the next regular meeting, held on May 1, 1934, Councilman Briley's motion to

reconsider was overruled, the ordinance passed again on third and final reading, and approved by the mayor on May 2, 1934, it is insisted that the attempted third and final passage on May 1, 1934, was invalid because the ordinance was not then before the council, and on information and belief it is alleged that the apparent approval by the mayor, on May 2, 1934, was a forgery.

In view of the conclusion reached by the court, it is not necessary to consider what happened on May 1, and 2, 1934.

Chapter 125, of the Private Acts of 1923, as amended, is the charter of the city of Nashville.

By section 6 it is, among other things, provided that no bill shall become a law without first having been passed on three several readings by a majority vote, on the third of which readings a majority vote of the whole number of the members of the city council shall be required, and until said bill shall have been signed by the mayor, or become a law without his signature, as provided, by the charter.

It is settled that charter requirements, prescribing the method to be pursued by a municipal body, are mandatory, and unless complied with, any attempted exercise of power is void. *Memphis Street Ry. Co. v. Rapid Transit Co. et al.,* 138 Tenn., 594, 198 S. W., 890; *State ex rel. v. City of Nashville,* 166 Tenn., 191, 60 S. W. (2d), 161; 2 Dillon on Municipal Corporations (5 Ed.), sec. 576.

Tested by this rule, the charter requirements were complied with when the ordinance passed third and final reading on April 17, 1934, and was approved by the mayor on April 19, 1934.

Section 7, provides that the city council may deter-

mine its own rules of proceeding, and that its presiding officer shall have the power to enforce such rules as may be adopted by it.

■ The rule here invoked is one of parliamentary procedure, and it is uniformly held that it is within the power of all deliberative bodies to abolish, modify, or waive their own rules of procedure, adopted for the orderly conduct of business, and as security against hasty action. *Bennett* v. *New Bedford*, 110 Mass., 433; *Holt* v. *Somerville*, 127 Mass., 408, 411; *City of Sedalia* v. *Scott*, 104 Mo. App., 595, 78 S. W., 276; *Ex parte Mayor,* *etc., of Albany*, 23 Wend. (N. Y.), 277, 280; *Wheelock* v. *City of Lowell*, 196 Mass., 220, 230, 81 N. E., 977, 124 Am. St. Rep., 543, 12 Ann. Cas., 1109; *City of Corinth* v. *Sharp*, 107 Miss., 696, 65 So., 888; *McGraw* v. *Whitson*, 69 Iowa, 348, 28 N. W., 632; *Tuell* v. *Meacham Contracting Co.*, 145 Ky., 181, 186, 140 S. W., 159, Ann. Cas., 1913B, 802.

It follows that the ordinance was duly and legally enacted on April 17, 1934, in accordance with the charter provisions, and that the alleged violation of the rule regarding reconsideration did not affect its validity.

■ (2) Power to pass an ordinance to protect its citizens from injury and death, caused by intemperate, inexperienced, rash, and reckless drivers of motor vehicles on its streets and thoroughfares plainly is conferred by section 12, which provides that the mayor and city council of the city of Nashville shall have power by ordinance: (12) To license, tax, and regulate automobiles, automobile trucks, etc., and (40) to pass all ordinances necessary for the health, convenience, safety, and general welfare of the inhabitants of the city, and to carry out the full intent, corporate purpose, and

meaning of the charter, as fully as if specifically authorized.

For the declared purpose of affording protection and security to its citizens, the city council enacted the challenged ordinance, which, on its face, shows that it was intended to subserve such a purpose, and the agencies and means provided for its enforcement reasonably are conducive to the declared end.

By its provisions, all drivers of motor vehicles on the streets and thoroughfares of the city are required on or before June 1, 1934, to obtain a form of application from the city comptroller, and answer numerous questions printed thereon, concerning their age, temperate habits, knowledge of the traffic laws of the state of Tennessee, and the traffic ordinances of the city of Nashville, demonstrate their ability, if called on, to drive a motor vehicle in crowded traffic, or properly to turn corners, give a complete record of all accidents they have suffered, the number of times arrested within the past two years for the violation of any ordinance, and the disposition of each and every case.

If applicants satisfactorily stand the examination, it is made the duty of the city comptroller to issue to them a card of identification, to be kept in possession of the driver, for the issuance of which a fee of 50 cents biennially is exacted.

It is provided that in cases of violations of the traffic laws, either of the state or of the city, the failure of drivers to have such cards in their possession will subject them to arrest and, if found guilty, to penalties to be imposed by the judge of the city court. It is made the duty of such judge, acting as supervisor of drivers' licenses, to indorse on the license card the nature of the

violation, the amount of the fine imposed, and the date thereof, and in cases of revocation of the license, for a period not to exceed six months, and solely for the reasons stated in section 6, to notify the city comptroller of such revocation.

As power to pass an ordinance of the character of the one here under attack is expressly delegated to the city, the question of its reasonableness probably is not subject to review by the courts.

The reasonableness of an ordinance is open to the scrutiny of courts when it is passed in pursuance of a general welfare clause, such as (40) quoted above, but if passed pursuant to an expressly delegated power, leading text-writers affirm that its reasonableness cannot be reviewed by courts in conformity with the rule applicable to statutes. 2 Dillon on Municipal Corporations (5 Ed.), sec. 600; 2 McQuillin on Municipal Corporations (2 Ed.), sec. 760.

Tested by either rule, the ordinance cannot successfully be attacked on the ground that it is unreasonable.

It is claimed that it is discriminative in that (1) it does not require the drivers of motor cars, who take out a driver's license prior to June 1, 1934, to stand the examination prescribed by section 1, and (2) that it exempts drivers who do not operate motorcars on the streets or thoroughfares of the city more than thirty days in any particular year.

As to the first point, the bill does not allege that the appellant is affected by the claimed discrimination, and consequently he cannot attack the ordinance on this ground.

When a statute or ordinance is assailed on the ground that it is invalid because discriminative, the

grounds on which the charge is predicated must be stated clearly and specifically, and not in such general terms as does the bill in this case.

 It is provided that all drivers of motor vehicles who apply for the driver's card prior to June 1, 1934, may, at the option of the city comptroller, be required to stand an examination as to their fitness, and the biennial license fee of 50 cents is exacted of them as well as of those to whom license cards are issued after June 1, 1934.

A wide range of discretion is allowed to lawmaking bodies in making classifications, and only when they are plainly arbitrary and palpably unjust are they condemned. *State* v. *McKay*, 137 Tenn., 280, 306, 193 S. W., 99, Ann. Cas., 1917E, 158.

In *Capitol Taxicab Co.* v. *Cermak, Mayor, etc.* (D. C.), 60 F. (2d), 608, 610, 611, the same point was made by the proprietors of a taxicab company operating in the city of Chicago. It was contended that the ordinance placed upon new applicants requirements not exacted of taxicab proprietors operating at the time of the passage thereof. The classification was held reasonable by District Judge LINDLEY, who cited and quoted many cases in support of his conclusion.

 The exemption of drivers who use the streets and thoroughfares for not more than thirty days in any particular year manifestly was intended to apply to transients, as it is a matter of common knowledge that in recent years travel by automoboile has become very popular. Clearly it was in the power of the council to make the exemption.

In *Thompson* v. *Smith, etc.*, 155 Va., 367, 154 S. E., 579, 71 A. L. R., 604 (1930), an ordinance of Lynchburg, con-

taining almost literally all of the provisions of Ordinance 903, was upheld as a valid exercise of the police power. It was, however, held void, solely on the ground that it attempted to confer power on the chief of police, and the judge of the municipal court, to suspend or revoke drivers' license cards at the will or discretion of these officials.

The Nashville ordinance contains no such objectionable feature, as the grounds on which the supervisor of drivers' licenses may revoke a license for a period, not to exceed six months, are expressly stated in section 6.

In *State* v. *Perry,* 138 S. C., 329, 136 S. E., 314 (1927), an ordinance of Charleston, strikingly similar to Ordinance 903, was upheld, and a like result was reached in *Wasson* v. *City of Greenville,* 123 Miss., 642, 86 So., 450.

In the ordinances involved in each of the three above-cited cases, provisions for examination of applicants on subjects embraced in the Nashville ordinance, a fee for the issuance of a driver's card, and periods of exemption from seven to sixty days in favor of transients, or occasional drivers, were upheld.

The grounds of attack, to the effect that the various provisions of the ordinance, considered separately and together, render it cumbersome and ineffective, and that existing traffic ordinances are adequate to attain the end for which it was passed, cannot be entertained and passed on by the court, as they are matters of policy, addressed solely to a lawmaking body. *State* v. *McKay,* 137 Tenn., 280, 281, 308, 193 S. W., 99, Ann. Cas., 1917E, 158.

Counsel for appellant cite *Godsey* v. *State,* 162 Tenn., 568, 569, 39 S. W. (2d), 286, in support of their contention that the Nashville ordinance is void in that

its operation is not restricted to drivers of motor vehicles on the streets and thoroughfares of the city, but, by a fair construction, includes the driving of such vehicles on private property.

As in eight different provisions its operation is restricted and limited to the driving of motor vehicles on the streets and thoroughfares of the city, and further as it requires as a condition precedent to the issuance of the driver's card that the applicant shall be familiar with the traffic laws of the state and of the city, it is plain that this ground of attack is without merit.

In *Godsey* v. *State, supra,* it was held that the body of chapter 87, Pub. Acts 1929, was broader than its caption, in that the caption purported to regulate the operation of motor vehicles upon the streets and highways of Tennessee, while in the body such operation was prohibited anywhere within the state of Tennessee.

As stated above, no such infirmity exists in the Nashville ordinance, and it may be noted that there is no clause in the charter of Nashville requiring a caption to an ordinance similar to article 2, sec. 17, of the Constitution, by the application of which the court held chapter 87, Pub. Acts 1929, unconstitutional.

▮▮▮▮▮ On the face of the ordinance, the fee appears to be a reasonable one, and a court will presume that if, as an incident to a police power regulation, a fee is charged, the proceeds derived from the exaction will be used legally.

In effect, the appellant requests the court to take judicial notice of the fact that the 50-cent biennial fee is a new privilege tax beyond the power of the city to impose.

Granted charter power, an ordinance, reasonably calculated to attain an end within the scope of the police

power, will be upheld. Even if it were fairly susceptible of two constructions, one of which would uphold it, and the other invalidate it, the former will be adopted by the courts.

Counsel for appellant seek to have the ordinance declared invalid on the ground, as the bill alleges, that not more than one per cent. of the proceeds of the levy are necessary for administrative enforcement purposes.

No supporting affidavits were offered at the hearing to substantiate this contention, and as the fee appears reasonable, a mere assertion of the bill, unsupported by proof, cannot convert a legal police ordinance into an illegal revenue measure.

Mathematical nicety is not exacted in cases where a license fee is charged as an incident to the enforcement of a police power ordinance. Before such an ordinance can be declared invalid, it must appear either on its face, or by proof, that it was in fact intended to be a revenue measure. The city council of Nashville is not presumed to violate the law, and the court cannot accede to the suggestion that such a presumption should be indulged.

 (3) *State ex rel.* v. *Bates,* 161 Tenn., 211, 30 S. W. (2d), 248, is relied on to support the contention that Ordinance 903 is void as being contrary to the public policy of the state of Tennessee.

An ordinance of the city of Memphis attempted to require operators of motor vehicles, carrying passengers for hire, to execute an indemnity bond to cover any injuries that the passengers might suffer from negligent operation.

This court, speaking through Mr. Justice Cook, held that a charter power to license, tax, and regulate automobiles did not authorize the city to exact security for

the benefit of passengers using automobiles, whether kept for hire, or otherwise.

It was held that such an ordinance was an added burden on the operation of automobiles intended only for the protection of persons riding in them, and was consequently in restraint of their use as taxed and licensed by the state to provide revenue for highway purposes.

The opinion clearly recognized that the charter authorized the regulation of automobiles, the persons in charge of them, and the licensing of those who operate them.

There is nothing in *State ex rel.* v. *Bates, supra,* which tends to support the argument that the Nashville ordinance is invalid, or places an added burden on drivers of motor vehicles, contrary to the declared public policy of the state.

It is a matter of common knowledge that many are killed, and more injured, every year by the reckless and heedless conduct of drivers of motor vehicles, especially in crowded centers of population. To minimize this danger was the patent motive and reason for the enactment of this ordinance.

The court is of the opinion that Ordinace 903 is, as it purports on its face to be, a valid exercise of the police power, and that authority to enact it was conferred by the charter on the city council of Nashville.

The decree of the court below is accordingly affirmed, at the cost of the appellant.