**Dalton HARRISON, et al., and all other persons similarly situated**

v.

**CITY OF CLARKSVILLE, TENNESSEE.**

No. 3:88–0954.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 21, 1989.

John D. Schwalb, Brewer, Krause & Brooks, Nashville, Tenn., for plaintiffs.

Overton Thompson, III, Farris, Warfield & Kanaday, Franklin, Tenn., Frank J. Runyon, Runyon & Runyon, Clarksville, Tenn., and Andree K. Blumstein and Ellen Hobbs Lyle, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

This matter is before the Court on defendant's motion for summary judgment against 34 plaintiffs (designated plaintiffs), all of whom were hired by defendant as firefighters after the compensation changes at issue in this suit took effect. For the reasons stated below, the Court finds that the defendant's actions are not void under Tennessee law and that, with respect to the designated plaintiffs, the change in the length of the shifts is bona fide under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended (FLSA). On the record currently before it,

however, the Court is unable to determine whether the designated plaintiffs agreed to the exclusion of meal and sleep periods from compensable time. The Court will reconsider defendant's motion on this issue upon the designated plaintiffs' submission of affidavits as specified below.

## I. HISTORY AND REQUIREMENTS OF FLSA

In 1974, Congress amended FLSA to apply to public employees, subjecting their employers to FLSA's overtime and minimum wage provisions. The Supreme Court subsequently declared the 1974 amendments unconstitutional as applied to public agencies administering "traditional government functions", including fire protection. *See National League of Cities v. Usery*, 426 U.S. 833, 851, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). Under *Usery*, none of FLSA's provisions governed the relationship between the defendant in this case and its firefighters. In 1985, however, the Supreme Court reversed itself, overruling *National League of Cities* in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), so that FLSA once again applied to the defendant's employment of firefighters. To ease the impact of *Garcia*, Congress amended FLSA to delay its application to State and local public sector employers, including the defendant, until April 15, 1986, providing these employers approximately one year to implement FLSA's requirements. *See International Ass'n of Firefighters v. City of Rome, Georgia*, 682 F.Supp. 522, 525-26 (N.D.Ga.1988).

At issue in this suit are 29 U.S.C. § 207(k) and the regulations governing its implementation. Section 207(k) requires that firefighters be compensated for overtime at a rate "not less than one and one-half times [their] regular rate" for hours worked which exceed 212 hours in a work period of 28 consecutive days.[1] Under the regulations promulgated in accordance with 207(k), sleep time can be excluded from compensable hours of work if the firefighters "are on a tour of duty of more than 24 hours [and] if there is an expressed or implied agreement between the employer and the employees to exclude such time." 29 C.F.R. § 553.222(c) (1988).[2] Up to eight hours of sleep time may be excluded from compensable time, but the employees must be compensated for any time the period is interrupted for a call to duty and for the entire period if the employees cannot get at least five hours sleep during the designated period. 29 C.F.R. § 785.22. Meal time may also be excluded from compensable time where the firefighters are on a tour of duty longer than 24 hours, are completely relieved of duty for at least 30 minutes of meal time, and expressly or impliedly agree to exclude the time. 29 C.F.R. §§ 553.223, 785.19 & 785.22.

## FACTS

After *Garcia*, the city took several steps to comply with FLSA. The city codified its intent to comply with the law in an ordinance passed through proper procedures on November 11, 1985. *See* Clarksville Code, Chapter 13, § 1-1330, Exhibits C & E to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Opposition). Before passage of the ordinance, the city had taken steps in May, 1985, to exclude eight hours of sleeping time and two hours of meal time per shift from compensable time. Subsequently, in September, 1985, the city increased its firefighters' shifts from exactly 24 hours on duty to 24 hours and 15

---

1. The statute provides that the threshold for overtime shall be the lesser of 216 hours or "the average number of hours, as determined by the Secretary [of Labor] ... in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975." 29 U.S.C. § 207(k). The secretary has determined that the average number of hours worked by such employees was 212. *See* 48 Fed.Reg. 40,519.

2. Until 1987, 29 C.F.R. § 553.222 was contained in § 553.15. In 1987, § 553.15 was sundered into two sections designated as §§ 553.222 & 553.223. The former section addresses the exclusion of sleep time; the latter the exclusion of meal time. The substance of these sections, as it applies to this action, however, was unchanged. The Court will follow the 1988 designations in this memorandum.

minutes. Consequently, the firefighters now work shifts for 24 hours and 15 minutes and are not compensated for eight hours of sleep time and two hours of meal time during each shift.

The city's Fire Chief, Gordon Keel, played an active role in implementing these changes. He and a Deputy Chief, Jerry Waugh, at the city's expense, attended a chiefs' meeting and seminar discussing FLSA. Keel Deposition at pp. 30–31. The Deputy Chief also attended other meetings concerning FLSA. *Id.* at 33. The firefighters employed by Clarksville at the time of the changes were informed of the designation of sleeping and eating time and of the extension of the shift through memoranda distributed to the station houses by Chief Keel. Although it appears that Chief Keel consulted regularly with the chairman of the city's Fire Committee concerning the implementation of the FLSA requirements, the full committee did not expressly consider and approve the extension of the shift or the exclusion of sleep and meal periods. Nor were these actions submitted to or approved by either City Council or the Personnel Committee. *See* Keel Deposition at 31; Defendant, City of Clarksville's Response to Plaintiff's First Requests for Admission, *filed as an attachment to* Plaintiffs' Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment. Nothing in the record, however, even remotely suggests that the firefighters were not aware of the changes.

The designated plaintiffs were employed well after the changes were implemented. All of the designated plaintiffs were hired between March 1, 1986, and October 19, 1987. *See* Keel Affidavit (filed 3/10/89). At the time they were hired, all of the designated plaintiffs were informed of the length of their shifts and of their annual salary. It is disputed whether Chief Keel or his deputies informed the designated plaintiffs before they were hired that sleeping and eating periods were excluded from compensable time. Although the record does not establish the precise time that each of these plaintiffs learned of the exclusion, it is clear that it was no later than the receipt of their first time sheets after they were hired. Based upon these facts, the designated plaintiffs claim that they did not agree to the exclusion of sleep and meal periods from compensable time. To support their claim, the designated plaintiffs have submitted affidavits attesting that they were not told, nor was it implied to them, that the exclusion of sleeping and eating time was a condition of their employment. They also attest that they objected the first time they were told or became aware that those periods were excluded.

## ANALYSIS

The city's actions were consistent with state law. Further, with respect to the designated plaintiffs, no issue exists concerning whether change in shift length was bona fide under FLSA. The issue of whether the designated plaintiffs agreed to the exclusion of sleep and meal times from compensable hours remains outstanding. The Court reserves judgment on this issue, however, pending submission by the designated plaintiffs of affidavits as specified below.

## A. THE CITY'S ACTIONS ARE VALID UNDER ITS CHARTER.

As a traverse to the defense that the plaintiffs agreed to the employment terms of which they complain, the designated plaintiffs now argue for the first time that even if there was such an agreement, the actions of the city are void because the city failed to follow the procedural requirements set forth in its charter. In the interests of justice and the policies underlying Rule 15, Fed.R.Civ.P., the Court has taken a liberal view of plaintiffs' complaint and considered the merits of plaintiffs' argument, even though it falls outside the scope of plaintiffs' complaint. The Court finds that the designation of sleep and meal times and the extension of the plaintiffs' shifts were day-to-day matters subject to the "general control and supervision" of Chief Keel under Section 7–303 of the Clarksville Code.

Plaintiffs argue that the extension of the shift and the exclusion of meal and sleep periods are properly characterized as either a formal rule or regulation or a policy. Plaintiffs argue that if the former characterization applies, the actions are void because City Council did not expressly and publicly approve the actions and because the rules were never filed with the City Clerk, both of which are required by the city's code. *See* Clarksville Code, Art. II, §§ 13, 17, Art. III, § 4, Plaintiffs' Response, Exhibit A; and Clarksville Code, Chapter 7, § 7-302, Plaintiffs' Response, Exhibit B. They argue that if the latter characterization applies, the action is void because it was not approved conjunctively by the mayor, city council and personnel committee. *See* Clarksville Code, Chapter 13, § 1-1309(c), Plaintiffs' Response, Exhibit C.

■ The Court disagrees with plaintiffs' argument. Plaintiffs are correct when they argue that charter requirements prescribing a method to be pursued by a municipal legislative body in adopting ordinances are mandatory, and an attempted exercise that is not in compliance with such requirements is void. *Rutherford v. Nashville,* 168 Tenn. 499, 79 S.W.2d 581, 584 (1935); *Wilgus v. Murfreesboro,* 532 S.W.2d 50, 52 n. 1 (Tenn.App.) (Drowota, J.), *cert. den.* (1975). It is also true that if a charter requires that the city act through passage of an ordinance, the city cannot rely upon a general provision of the charter to excuse its failure to conform to the express requirements of the charter, which are mandatory. *Lebanon v. Baird,* 756 S.W.2d 236, 243 (Tenn.1988). Furthermore, where the state legislature delegates police power to a municipality, that power must be exercised exclusively through ordinances. *Brooks v. Garner,* 566 S.W.2d 531, 532 (Tenn.1978). When applied to the record before the Court, however, this authority does not support plaintiffs' conclusion that the city's actions are void. The city in fact passed an ordinance in November, 1985, stating its intention to comply with the requirements of FLSA. The method in which the ordinance was passed is beyond reproach. Not only did it adhere

to the procedural requirements set forth in the charter, but also it gave any interested citizens an opportunity to voice their support or opposition to the action and to inquire publicly about the city's efforts to adhere to FLSA's requirements. *Cf. Lebanon v. Baird,* 756 S.W.2d at 243. Therefore, the city's codification of its intent to comply with FLSA was a valid exercise of its authority under its charter and Tennessee law.

■ Nor was the chosen means of implementing the ordinance deficient. In spite of the general rule that specific charter requirements are mandatory, *see Rutherford,* 79 S.W.2d at 584, where more than one means of accomplishing a legitimate municipal goal is authorized, the city has the discretion to choose which means it will utilize. *Lebanon v. Baird,* 756 S.W.2d at 242. Moreover, charter requirements must be given a reasonable construction "that does not result in frustrating the legislative process at the municipal level." *Metropolitan Gov't v. Mitchell,* 539 S.W.2d 20, 21 (Tenn.1976). Through the ordinance passed in November, the city codified its intent to comply with FLSA. It elected to rely upon the discretion of Chief Keel to implement the means of compliance. This election is a reasonable delegation of control over mundane affairs and is consistent with the charter's authorization that the fire chief will have "general control and supervision of all members of the fire department[,]" Clarksville Code, § 7-303, Plaintiffs' Response, Exhibit B, and with the Chief's powers as set forth in the fire department's Rules and Regulations which were in effect at the time of the city's actions. *See* Keel Deposition, Exhibit 1. Were Chief Keel unable to implement the FLSA requirements without imposing additional burdens upon the public fisc or altering the staffing levels of the department, other procedures specified in the charter would have ensured public scrutiny of his actions.

The public had the opportunity to address this issue when the ordinance was passed. Furthermore, the charter contains a broad delegation of authority to the fire

chief over the department's day-to-day affairs. Moreover, alternative charter provisions provide adequate checks upon the fire chief's discretion, subjecting certain actions to public scrutiny without intruding unduly into his management of the department. The city's codification of its intent to comply with FLSA and its delegation to the fire chief of the power to implement changes pursuant to that mandate not only complied with the technical requirements of the charter, but also satisfied the broader concern that the city's actions were not hidden from public view. Therefore, the city's actions were valid exercises of municipal authority.

### B. AS APPLIED TO THE DESIGNATED PLAINTIFFS, THE CHANGE IN SHIFT LENGTH IS VALID UNDER FLSA.

■ The designated plaintiffs would have this court rule that the city was precluded from offering them positions as firefighters under the condition that they work shifts lasting 24 hours and 15 minutes. This argument has no merit. First, nothing in FLSA requires the conditions of employment for employees beginning after a specified date to be the same as the conditions applicable to employees who were already on board. Although FLSA does prohibit discrimination against *employees* who attempt to assert their rights under FLSA, *see Blanton v. Murphreesboro*, 856 F.2d 731, 734–36 (6th Cir.1988), no such discrimination is presented by the facts of this case.

■ Second, the change in shift length was bona fide under FLSA as applied to the designated plaintiffs. The record demonstrates that the designated plaintiffs were aware of the length of the shifts before they accepted their employment with the city. This constitutes an implied acceptance of that term of employment. Where employees agree to an extension of a tour of duty, they carry a heavy burden to demonstrate that the extension was ille-

gitimate. *International Ass'n of Firefighters v. Rome, Georgia*, 682 F.Supp. 522, 529 (N.D.Ga.1988). The designated plaintiffs simply cannot carry that burden. A schedule change may not be implemented merely as a subterfuge to avoid the applicability of FLSA. *Id.* at 527, *citing Walling v. Helmerich & Payne*, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29 (1944). But the mere fact that one of the motives in extending a shift is to be able to deduct sleep periods from compensable time does not, in itself, render the change invalid. *Id.* at 528. Whether the change was compensated is also a factor to weigh in determining whether the action was valid. *Id.* The city admits that one of its reasons for implementing the change was to take advantage of the provisions allowing deductions of sleep time. It also appears that the city implemented the change to facilitate a smooth transfer between shifts. Finally, the designated plaintiffs were in fact compensated for the full shift. At the time they were hired, they were informed of their shift length and of their annual salary. They accepted these terms when they accepted their employment. They cannot now be heard to claim that they were not compensated for 15 minutes of each shift. Taken together, these factors lead to the inescapable conclusion that the city's actions in relation to the designated plaintiffs were valid under FLSA.[3]

### C. THE COURT RESERVES JUDGMENT ON WHETHER THE DESIGNATED PLAINTIFFS AGREED TO THE EXCLUSION OF SLEEP AND MEAL PERIODS PENDING THE SUBMISSION OF SUPPLEMENTAL AFFIDAVITS.

■ As applied to these plaintiffs, the city's actions were valid under the city charter, Tennessee law, and FLSA. Therefore, the only remaining material issue is whether the designated plaintiffs agreed to exclude sleep and meal periods from their compensable time. Under Rule 56(e), Fed.

---

**3.** The Court does not consider or express any opinion at this point on the issue of whether FLSA's requirements that *changes* in scheduling

be bona fide apply to changes made before FLSA was applicable to the defendant.

R.Civ.P., a party opposing a motion for summary judgment must go beyond the allegations of his pleadings and submit specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The affidavits submitted by the designated plaintiffs do not go sufficiently beyond their pleadings to demonstrate that a genuine issue for trial exists.

In the interests of justice, however, the Court shall reserve judgment on defendant's motion for 20 days. Before the expiration of that time, plaintiffs shall submit supplemental affidavits. The affidavits shall specify the date when each plaintiff began his employment with the city and when he first learned that meal and sleep time were excluded from compensable time. They shall specify when plaintiffs first objected to the exclusion, to whom they objected, and in what manner they communicated their objection. They shall also specify whether and in what manner the plaintiffs registered any additional or continuing objections to the exclusion.

## CONCLUSION

For the reasons stated above, the Court reserves judgment on defendant's motion for summary judgment pending the submission of supplemental affidavits by the designated plaintiffs within 20 days of the entry of this order.

## ORDER

In accordance with the accompanying memorandum, the Court reserves judgment for 20 days on defendant's motion for summary judgment. During that time, the designated plaintiffs shall submit supplemental affidavits. The supplemental affidavits shall specify the following:

1.  When the plaintiff filing the affidavit began his employment with the city;

2.  When the plaintiff filing the affidavit first learned that sleep and meal periods were to be excluded from compensable time;

3.  When the plaintiff filing the affidavit first objected to the exclusion of sleep and meal periods;

4.  To whom and in what manner did the plaintiff object;

5.  To whom and in what manner did the plaintiff register any additional or continuing objection(s) to the exclusion of sleep and meal periods.